LANDRY, Judge.
This is a malpractice suit wherein plaintiff, Jules C. Fontenot, seeks damages individually and as administrator of the estate of his II1/2 year old daughter, Riki-Jo, from defendant, Aetna Casualty & Surety Company, insurer of Dr. David W. Van Gelder, Pediatrician, for personal injuries sustained by said minor in a fall in Dr. Van Gelder’s office, and medical expense incurred by plaintiff in the treatment of the child’s injuries. The trial court rejected plaintiff’s demands, hence this appeal.
There is virtually no dispute between the parties relative to the facts of the instant case and it is practically conceded by the litigants that only questions of law are presented herein.
On May 8, 1962, appellant’s aforesaid minor child was taken by her mother to Dr. Van Gelder’s office in Baton Rouge, Louisiana, for examination and treatment relative to a complaint of persistent mild fever. Following a 45 minute examination Dr. Van Gelder diagnosed the child’s condition as *300 bronchitis and elected to administer an injection of penicillin while the child was seated on a padded treatment table measuring five and one-half feet in length, two feet in width and approximately 34 inches in height. In the room with Dr. Van Gelder were his nurse, Maylene Loften, Riki-Jo and the latter’s mother, Mrs. Fontenot. The child was seated on the treatment table with her back to the wall, her legs dangling over its side. While in this position she was administered an injection of penicillin into her left thigh by Dr. Van Gelder who then laid his syringe down, went to the foot of the treatment table and picked up the child’s medical chart. At tjjis time Riki-Jo moved as to dismount from the table but instead pitched forward, fell on her face striking her mouth against the floor causing the injuries sued upon. At the time of the accident Dr. Van Gelder was withiii arm’s reach of the child as was also Mrs. Loften who was standing to the right of the young girl near the head of the treatment table. Mrs. Fontenot was seated in a chair approximately three feet distant from her daughter. All of the adults present testified unequivocally Riki-Jo appeared perfectly calm after receiving the injection. The child showed absolutely no signs of weakness, discomfort, faintness or distress of any nature. She did not complain of feeling ill, neither did she ask for assistance, turn pale or perspire freely which latter symptoms usually presage an imminent fainting spell. It is conceded by all present the child appeared to be alighting from the table in a perfectly normal manner without requesting assistance when she fell with such suddenness and unexpectedness that none of the adults in the room had an opportunity to assist her or break her fall.
Appellant maintains the accident and resulting injuries to his aforenamed minor daughter resulted from the negligence of defendant’s said insured (and his employees) in failing to take proper precautions in giving a hypodermic injection to the child; not placing the child in such position as to avoid a fall in the event she should faint, failing to have someone attend the child after administering the injection, neglecting to have the usual tests made to determine if the child would react to the intended injection and admitting to do what should have been done under the circumstances.
Defendant denies any negligence on the part of its said insured or any of his employees and further invokes the defense that said insured is a trained, careful and prudent practicing pediatrician who exercised that degree of care and skill ordinarily employed under similar circumstances, by" the members of his profession in good standing in the same community and who also used reasonable diligence, along with his best judgment, in administering to his said patient. Alternatively, defendant alleges contributory negligence on the part of the patient in that she failed to give indication or warning of any feeling of weakness or tendency toward fainting or loss of balance or the need of assistance. In the further alternative, defendant pleads the contributory negligence of the parent present in failing to assist and safeguard the child or to support the child and prevent the fall. (This latter contention of defendant raised certain interesting legal questions which we need not consider herein in view of our conclusion on other issues as will hereinafter appear.)
Learned counsel for appellant specifies two errors on this appeal, namely: (1) the facts adduced upon trial do not justify the trial court’s conclusions; and (2) the esteemed trial court neglected to apply the rule announced in Favalora v. Aetna Casualty & Surety Company, La.App., 144 So.2d 544, cert. den. November 8, 1962.
The general rule of law controlling the instant case is that stated in Meyer v. St. Paul-Mercury Indemnity Company, 225 La. 618, 73 So.2d 781, wherein it is set forth that in dealing with his patients it is the duty of a physician, surgeon or dentist to exercise that degree of skill ordinarily employed, under similar circumstances, by *301 the members of his own profession in good standing in the same community or locality and, in addition, to use reasonable care and diligence, along with his best judgment, in the application of his skill to each particular case.
At the trial below, able counsel for appellant entered a general objection to all evidence tending to show the general practice in similar circumstances in the community, said objection being predicated upon the erroneous assumption that the recent decision in Favalora v. Aetna Casualty & Surety Company, supra, rendered such an inquiry immaterial. However, the Favalora case, supra, hereinafter discussed in considerable detail, although clearly predicated upon the rule enunciated in the Meyer case, supra, nevertheless turned on the second element of a physician’s duty as therein expressed.
Our own independent perusal of the record in the case at bar convinces us the trial court correctly concluded as follows :
“This Court does not feel that it was reasonably foreseeable that this child would faint and further, from the testimony of the child’s mother, as well as the nurse and doctor, that the event happened so suddenly that there was nothing anyone could do to prevent the child from falling. Even the mother, who was seated some two and a half or three feet away, thought the little girl was getting down from the table to put on her shoes and did not know that the child was fainting until she had fallen to the floor. Although the Court is in sympathy with the little girl in the instant case, it feels that Dr. Van Gelder has exercised the degree of skill ordinarily employed under similar circumstances by the members of his profession in good standing in this community and that he used reasonable care and dilgence along with his best judgment in the application of his skill to the case. His nurse was standing by, observing the little girl and the mother, as stated above, was seated only two and a half or three feet away, and it is reasonable to presume that either of these people would have taken hold of the child if there had been any warning whatsoever that she was about to faint. The laws of this state do not hold a doctor absolutely liable for any injui'y which occurs in his office.”
Notwithstanding the foregoing deductions of the trial court appellant maintains that tribunal erred in concluding it was not reasonably foreseeable the child would faint. Astute counsel further argues that the possibility of the child’s fainting was a recognizable and forseeable contingency which the doctor should have guarded against and his failure to do so amounted to negligence constituting a proximate cause of the resulting injuries. Dr. Cecil Lorio, a pediatrician practicing his specialty in Baton Rouge since 1926, Dr. William G. Palfrey, a pediatrician engaged in said limited field since 1951, and Dr. Van Gelder, himself a pediatrician and part-time professor of pediatrics at Tulane University Medical School were all called to testify on behalf of appellee. Dr. Charles McVea, a general surgeon of “many, many years” experience, attested by deposition.
We deem it unnecessary to review in detail the evidence of each said expert witness considering there appears little significant difference in their respective views. A fair summation of their collective testimony is that the method employed by Dr. Van Gelder in the administration of the injection in question was the most suitable and preferable. Although Dr. McVea expressed the preference of giving injections in the buttocks with the patient standing rather than sitting, he nevertheless might have the patient sit if he were injecting the patient in the arm. All the authorities agreed that in giving children injections is was preferable to administer such medication under the most natural conditions, either standing or sitting, in order to avoid alarm *302 ing or frightening the patient. The experts are in unanimous agreement that to unduly excite a child under such circumstances might require the use of physical restraint which would in turn complicate and render more hazardous the procedure of giving the injectible. For these reasons the better practice is not to place a child in a prone or supine position for administration of a hypodermic.
It was the further concensus that fainting is a rare phenomenon among children of the age 11-12 years. Dr. Lorio had never experienced such a patient fainting since 1926. In his experience Dr. Palfrey, since 1955, had only seen three children faint, these being between the ages of 13 and 14.
Appellant relies most heavily upon the testimony of Dr. McVea who stated, in essence, that it is possible that upon being given a penicillin injection a patient of any age may faint. Dr. McVea testified further that after administering the injection it is his custom to turn to the lavatory, rinse out the syringe used and then turn back to the patient to observe for signs of distress and if none are detected the patient is permitted to leave. On cross-examination Dr. McVea indicated that with a patient 11 years old he believed he would inquire concerning the child’s condition before proceeding to clean his instrument and if the response were favorable, he would then permit the patient to dismount from the table. We note no difference between the procedure suggested by Dr. McVea and that employed by Dr. Van Gelder excepting only the record does not affirmatively establish that Dr. Van Gelder asked the child how she felt following the injection. We believe it further significant that among the pediatricians who testified, the testimony is unanimous to the effect there is no reason to anticipate a child of 11-12 years will faint during or immediately following an injection of the sort administered herein.
The Favalora case, supra, so strongly relied upon by appellant herein is readily distinguishable on its facts. We believe in the soundness of the views therein expressed and have no reason, nor do we herein intend to limit or restrict the rules therein enunciated. We do, however, find herein circumstances which render the law of that case inapposite to the case at bar.
In the Favalora case, supra, the evidence showed that patients fainting while undergoing radiological examination of the type therein involved was a foreseeable contingency occurring with such frequency that technicians and radiologists were specifically cautioned against such possibility in their training. In the case before us there is no such evidence of record. On the contrary, the testimony of those experts engaged in the field of pediatrics clearly establishes there is no reason to expect that a child of 11-12 years will faint during or following administration of an injection.
Also, in the Favalora case, the evidence suggested three precautionary measures designed to prevent an accident of the type therein involved. It further appears the physician in the Favalora case having chosen that procedure which depended upon his physical alertness and agility, was held to have a duty to remain vigilant and attentive to the patient in the event a foreseeable emergency should occur. In the instant matter, the evidence suggests no precautionary measures other than physical observation of the patient which procedure was followed by Dr. Van Gelder. The suggestion of learned counsel for plaintiff that the accident may have been avoided by having the patient lie down and remain in a prone position for a few minutes following the injection, was clearly repudiated by all experts who foresaw resulting potentialities which made such suggested procedure unwise.
Again, in the Favalora case, supra, the patient was an elderly person with a complaint of fainting which condition was one of the reasons necessitating her examination. She had not eaten for some time because the nature of the contemplated examination required her refraining from *303 partaking of food for a specific period prior thereto and she had been in the radiology-department for an extended period of time. In the instant matter, the patient was of an age in which fainting was considered a rare occurrence and a remote possibility. According to the child’s mother, the patient had no predisposition to faint.
In the Favalora case, supra, the hospital employees and the radiologist failed to ask the patient what complaints necessitated the examination. Had the patient’s history been taken it would have revealed that fainting, (a hazard to be guarded against), was one of the symptoms occasioning her examination. Herein the record reveals the attending physician first obtained a full history of the patient including her sensitivity to the drug being administered. No propensity to reaction was revealed, nor was it disclosed the patient professed an inclination to faint. On the contrary, it clearly appears there was no reason to suspect the girl would swoon.
Furthermore, in the Favalora case, the examination was conducted in a darkened room which made it impossible for the radiologist and attendants to observe physical signs of distress which might forebode a fainting spell. Under such circumstances, greater precaution was required to protect the patient against a known danger. In the present suit, both the physician and his nurse were standing nearby ready to assist the child in the event she displayed detectable signs of fainting such as wanness, vertigo or excessive perspiration. All witnesses present agree no such discernible signs of distress or discomfort were exhibited by the patient, nor did she in any manner display a need for or request assistance as she started to dismount from the table. The evidence leads to the inescapable conclusion the child fainted as she was in the act of alighting unassisted from the table apparently in full possession of her faculties and in no need of help.
In the instant case the record reveals the physician concerned exercised that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the community and also used reasonable care and diligence along with his best judgment in the application of his skill. The trial court correctly applied the doctrine announced in Meyer v. St. Paul-Mercury Indemnity Company, 225 La. 618, 73 So.2d 781.
Accordingly, the judgment of the trial court is affirmed at appellant’s cost.
Affirmed.